UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BARBARA BOLLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:23-CV-32-PPS-JEM |
| | ) |
| GARY COMMON COUNCIL OF CITY OF GARY., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff, Barbara Bolling, filed a motion for award of attorney fees. [DE 29.] Defendant Gary Common Council filed an objection [DE 32] which I have reviewed, as well as Bolling's reply brief [DE 35]. For the reasons set forth below, I am going to reduce the requested amount of attorney fees by 20%.

## Background

Plaintiff, Barbara Bolling, brought this case against Defendants, Gary Common Council, and against the Lake County Board of Elections and Registrations and its Director, Michelle Fajamn. The basic claim is that the Common Council failed to redistrict the six council districts after the 2020 census was conducted by December 31, 2022, as is required by Indiana law. [Compl., DE 1; DE 2 at 2.] Bolling filed her complaint on January 25, 2023, along with a motion for preliminary injunction. [DE 1, 2.] With the primary election set for May 2, 2023 (and other electoral deadlines to meet as well), this put everyone on a tight schedule.

With the primary election looming, I held an in person initial hearing on this

matter as quickly as possible—on February 1, 2023. The parties then fully briefed the motion for preliminary injunction. I set a hearing on the merits of the preliminary injunction for February 14, 2023. But when the parties arrived at that hearing, Plaintiff notified the court they had reached an agreement in this matter. The Plaintiff then filed a motion to approve a consent judgment on February 21, 2023, which I granted, and she then dismissed this case. [DE 25, 27.] In my order approving of the consent judgment, I reiterated the parties' agreement that Plaintiff may petition the Court for her fees and costs pursuant to 42 U.S.C. § 1988. [DE 27 at 5.]

On March 3, 2023, Plaintiff filed the instant motion requesting an award of attorney fees incurred by William Groth, with Bowman & Blink, LLC, in the amount of $35,840, and an award of attorney fees and expenses for Tracy Coleman, of Coleman Law Group LLC, in the amount of $40,249.50 ($39,847.50 in attorneys fees and $402 in costs for the filing of the lawsuit). [DE 29.] Along with the motion, Plaintiff filed affidavits by Groth and Coleman detailing their qualifications, hourly rate, and ledgers describing the attorneys' time on this matter. [DE 29-2, 29-3.] In Bolling's reply brief, she requested an additional $5,750 representing 5 additional hours per attorney for additional time litigating the fee petition. [DE 35 at 1.] In other words, the total amount requested in attorneys fees and costs by Plaintiff is $81,839.50.

## Discussion

Under 42 U.S.C. § 1988, in an action to enforce a provision of 42 U.S.C. § 1983, the court may award the prevailing party reasonable attorneys' fees as part of the costs. This fee-shifting is designed to ensure "effective access to the judicial process" for

2

persons with civil-rights grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Plaintiffs are considered "prevailing parties" for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433. Here, Plaintiff is plainly the prevailing party, and the Defendants do not contend otherwise. The only issue is whether the amount of fees sought is reasonable.

In calculating a reasonable fee award, courts first calculate a "lodestar" amount by multiplying the attorneys' hours on the case by a reasonable hourly rate. *See id.*, *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011). After calculating the lodestar amount, the court may then adjust the amount upward or downward depending on a variety of factors, such as: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the necessary skill to perform the legal services properly; (4) the likelihood that the acceptance of a particular employment will preclude other employment by the lawyer; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir. 1984).

The Court has "wide discretion in determining the appropriate amount of attorneys' fees and costs." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). "The Court must provide a reasonably specific explanation for all aspects of a fee

determination, but its explanation need not be lengthy." *Ozinga v. U.S. Dep't of Health & Hum. Servs.*, No. 13 C 3292, 2018 WL 2320933, at *2 (N.D. Ill. May 22, 2018) (citation and internal quotation marks omitted).

In starting with the lodestar calculation in this case, Coleman has an hourly rate of $550 per hour with over 25 years of experience, and attorney Groth has an hourly rate of $600 per hour with over 47 years of experience. Defendants claim Bolling's counsel "failed to show [how] their hourly fees are reasonable compared to other Attorneys in the area," criticizing them for citing cases of similar hourly rates from Chicago instead of the Northern District of Indiana. [DE 32.] However, Defendants have the burden backwards. "Once an attorney provides evidence of his [or her] billing rate, the burden is upon the defendant to present evidence establishing a good reason why a lower rate is essential. A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (quotation marks and citation omitted). In other words, "[t]he Court presumes that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 WL 3341033, at *2 (N.D. Ind. July 7, 2014).

As I mentioned before, where attorneys "provide the rates actually billed, the burden shifts to the party opposing the fee award to demonstrate why a lower rate should be awarded." *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods.*, No. 1:16-cv-00355-HAB-SLC, 2019 WL 2635944, at *7 (N.D. Ind. June 27, 2019). Here, Bolling's attorneys have provided the rates her attorneys actually charged. Therefore,

4

Defendants must provide a good reason why a lower rate is justified. Defendants have not set forth any evidence whatsoever to rebut the reasonableness of the hourly rates of Groth or Coleman. The analysis of the reasonableness of the hourly rates necessarily stops there. *See Axis Ins. Co. v. American Specialty Ins. & Risk Servs., Inc.*, No. 1:19-cv-00165-DRL-SLC, 2022 WL 950604, at *4 (N.D. Ind. Mar. 30, 2022) (finding there was no need to look at fee rates in other cases or previous awards to the attorneys at issue where the defendants failed to present a good reason why the rates should be lower).

Defendants also question whether all of the hours of work were reasonably expended. [DE 32 at 3-5.] In response, Plaintiff's attorneys detailed the express time frame they were on, their need to work in tandem to prepare the case and brief the motion for preliminary injunction, and their futile efforts to resolve the matter without litigation (for example, on January 25, 2023, Ms. Coleman sent an e-mail to defense counsel providing a courtesy copy of the complaint and seeking an agreement to schedule mediation or an informal conference to see if the matter could be resolved without lengthy litigation) [DE 35-7]. All of these actions seem quite reasonable and necessary to me. And Plaintiffs unquestionably did an excellent job in being prepared for this litigation, filing a comprehensive preliminary injunction with an expert affidavit, and achieving a fast and excellent result for their client.

However, to be candid about it, I am bothered by the fact that this litigation was pending in earnest only about 27 days, and the case was not especially complicated. In a nutshell, the Gary Common Council had until the end of 2022 to redraw the district lines following the 2020 census. They dropped the ball and in the process left some

5

districts to be substantially out of proportion with other districts. This, in turn, made some voters more powerful than others which runs counter to the Equal Protection Clause and basic democratic norms. To successfully prosecute the claim during the 27 days it was active, Plaintiffs' lawyers filed a nine page complaint [DE 1], a nine page brief in support of the motion for preliminary injunction [DE 3] and two four page reply briefs [DE 19, 20]. For their efforts they seek an award of attorney fees in the total amount of $81,839.50, an amount that frankly strikes me as a bit excessive.

I have scoured the attorneys' time logs, and there are a few entries which I think were not reasonably expended. First, Ms. Coleman spent 5 hours of time to "copy all pleadings, travel to Gary Common Council and LCBER to serve pleadings. Prepare pleadings for service. File documents with Court. Email communications." [DE 29-3.] While I am sympathetic to her explanation that she felt obliged to personally serve all Defendants to make sure they would appear in court on February 1, 2023 [DE 35 at 8], these are administrative matters that I don't believe should be charged to opposing counsel (or at least not charged at her full legal rate). *See Bratton v. Thomas Law Firm, PC*, 943 F.Supp.2d 897, 907 (N.D. Ind. 2013) ("Generally, attorney or paralegal time should not be charged for administrative tasks.").

Second, between the two attorneys, it looks like they spent approximately 15 hours in researching this case before preparing the pleadings. (The exact number each attorney spent on advance research is impossible to discern because some of the descriptions for billing lump together multiple activities like researching, communicating, and having a telephone conference), but my best approximation from

the submitted ledgers is that both attorneys spent 15 hours in total researching the case. This amount of research, being conducted by both attorneys at once, seems duplicative and excessive, and should be reduced.

Third, although it is difficult to tell exactly, it seems there are multiple instances of communications between attorney Coleman and Groth, where both attorneys billed for these talks.[1] "Time spent on . . . work consisting solely of communications among the various attorneys acting as co-counsel for the plaintiffs can not be allowed because such time was duplicative and unnecessary and, therefore, not reasonably spent." *Doe v. Howe Military Sch.*, No. 3:95-CV-206RM, 1996 WL 939352, at *4 (N.D. Ind. Oct. 16, 1996); *see also Arrington v. La Rabida Children's Hosp.*, No. 06 C 5129, 2007 WL 1238998, at *3 (N.D. Ill. Apr. 25, 2007) ("These entries are also duplicative. For example, Ms. Urquhart and Mr. Garbutt *each* billed time for conferring with one another.").

Finally, Mr. Groth is from Indianapolis and Ms. Coleman from Gary, Indiana. I question whether both of their attendance was required at the hearing held in Hammond on February 1, 2023 (which the court stated in advance would not be a hearing on the merits of the requested preliminary injunction, but rather a hearing to discuss the situation, set a briefing schedule, and pick a date for a formal hearing on the motion for preliminary injunction). Both also attended and billed for the hearing on

---

[1] Difficult because Ms. Coleman often recorded "email communications" or "strategy discussion" or "telephone conference" without indicating whether these were with the client or her co-counsel, or someone else entirely. [DE 29-3 at 4-5.] However, Mr. Groth was typically more detailed and reported emails to/from Coleman, and teleconferences with her. [DE 29-2 at 4-5.] Nevertheless, when the two attorney fees ledgers are placed side by side, it does seem that both Groth and Coleman billed for communications with each other.

February 14, 2023, where a settlement was immediately announced. Although Mr. Groth reduced his rate for the 10 hours of travel he incurred in attending these two hearings to $200 an hour, that is still $2,000 in mere travel expenses he billed on those two occasions, in addition to the time he spent at the hearings billing at his full legal rate. This also strikes me as duplicative and unnecessary under the circumstances. Although Plaintiff's attorneys claim they needed to prepare for the preliminary injunction hearing because defense counsel did not express a serious interest in settling "until close to the last minute prior to the preliminary injunction hearing scheduled on February 14" [DE 35 at 3], they don't assert that they did not know the parties had reached a settlement before attending the hearing.

In sum, given that some of Bolling's billing entries reflect work that is not compensable or is redundant, some reduction in time is necessary. I really have no interest in going line by line to determine the exact number of hours to reduce the requests by (and, considering attorney Coleman's practice of lumping some work together and generalizing things like "email communications" or "conference call" without indicating the participants), this would be really hard to do. Instead, I'm just going to reduce the fee request by a percentage. *See, e.g., Panwar v. Access Therapies, Inc.*, No. 1:12-CV-00619-TWP, 2014 WL 820023, at *11 (S.D. Ind. Mar. 3, 2014) ("The Magistrate Judge sees no utility in attempting to address every questionable line of the 266 entries. Instead, reduction by percentage is more appropriate."); *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000).

Given the short amount of time this litigation was pending, the small amount of

written product that was generated in the case, the relatively straight-forward nature of the claim, the duplicative and vague nature of some of the bills submitted by both Ms. Coleman and Mr. Groth, and some administrative duties billed by Ms. Coleman, I believe a 20% reduction in the fee request is appropriate. This 20% reduction comes to about $14,000, and is roughly equal to reducing the total fees by the amount billed in the questionable entries (5 hours of administrative work, a reduction in the 15 hours of research, the 10 hours of travel time for Mr. Groth which he charged $2,000 for, and his attendance at the hearings, and about 8-10 hours of time billed for the attorneys communicating with each other).

In turning to Plaintiff's attorneys' request for fees to cover litigating this motion for fees, I am of course cognizant that Bolling is "entitled to recover a reasonable amount of attorneys' fees for litigating the fee issue." *Struve v. Gardner*, No. 1:19-cv-4581-RLY-MJD, 2021 WL 1948868, at *3 (S.D. Ind. May 14, 2021). I find the request of fees for Ms. Coleman (6 hours plus 5 additional hours for the reply brief) and fees for Mr. Groth (3.5 hours plus 5 additional hours for the reply brief) is entirely reasonable and will approve the amount requested in fees for litigating the attorney fee issue in full ($6,050 for Ms. Coleman and $5,100 for Mr. Groth).

In total, Mr. Groth is granted fees in the amount of $32,092 and Ms. Coleman is granted fees in the amount of $35,288 and costs of $402. The total amount of attorney fees awarded is $67,380 and costs of $402.

## Conclusion

After implementing a 20% reduction in the original requested amount, but

allowing for reimbursement in full for the fees incurred in litigating this issue, Plaintiff's Motion for Attorney Fees [DE 29] is GRANTED in that Plaintiff's attorneys are granted a total award of attorney fees in the amount of $67,380 and costs of $402. Specifically, Ms. Coleman is awarded $35,288 in fees and costs of $402, and Mr. Groth is awarded $32,092 in fees.

ENTERED: May 16, 2023.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**